UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JOHN C. GRIMBERG CO., INC., | |
| Plaintiff, | |
| v. | Civil Action No. _____ |
| INDIAN HARBOR INSURANCE CO., | JURY TRIAL REQUESTED |
| Defendant. | |

## COMPLAINT

Plaintiff, John C. Grimberg Construction Co., Inc. ("Grimberg"), by and through its attorneys, brings this Complaint and alleges as follows:

## PARTIES

1. The John C. Grimberg Co., Inc. ("Grimberg") is a Maryland corporation with its principal place of business in Rockville, Maryland.  Grimberg is a general/mechanical contractor with seventy years of experience performing major public works and construction projects in the Washington, D.C. area.

2. Indian Harbor Insurance Co. ("Indian Harbor") is a Delaware corporation with its principal place of business in Stamford, Connecticut. Indian Harbor is authorized to transact business in Maryland as an insurer. Indian Harbor may be sued through its registered agent for service of process: The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

1

## JURISDICTION

3. This Court has jurisdiction over this request for declaratory judgment under Federal Rule of Civil Procedure 57 and the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201–02.

4. This Court has diversity jurisdiction under 28 U.S.C. § 1332 because this is a civil action between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

## VENUE

5. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the alleged events and/or omissions giving right to the claims occurred in this District at Grimberg's main office in Rockville, Maryland, including but not limited the underlying loss occurring in this District, the insurance policy at issue being entered into, negotiated, paid for, and/or delivered in this District, the underlying claims being asserted in this District, and Indian Harbor breaching its obligations owed to Grimberg in this District.

## GENERAL ALLEGATIONS

6. This Complaint concerns insurance-coverage issues between Grimberg and Indian Harbor arising out of the Middle/High School Replacement Project located at the Marine Corps Base Quantico in Quantico, Virginia (the "Project").

7. Grimberg was the general contractor for the Project.

8. Indian Harbor sold Grimberg a "Professional & Pollution Liability For Construction Contractors And Construction Support Services Providers" policy to Grimberg (the "Indian Harbor Professional Liability Policy") that provides for "Rectification Coverage" in the amount of $3,000,000.

9. "Rectification Coverage" provides coverage for damages arising out of negligent acts, errors or omissions from professional services performed by or on behalf of the insured, in this case, a general construction contractor.

10. "Rectification Coverage" pays for the insured's expenses reasonably incurred in rectifying a negligent act, error or omission arising from the professional activities or services performed by or on the behalf of the insured construction general contractor.

11. Under the "Rectification Coverage" provisions of the Indian Harbor Professional Liability Policy, the insurance carrier agrees to indemnify the insured general contractor for the reasonable costs and expenses incurred by the insured in rectifying the negligent acts, errors or omissions arising from the professional services performed by or on behalf of the insured contractor, Grimberg.

12. On September 10, 2021, Grimberg tendered to Indian Harbor notice of its claim for "Rectification Coverage."

13. Indian Harbor has failed to indemnify or to fulfil its obligations to Grimberg in connection with its claim for "Rectification Coverage."

14. Grimberg now seeks a declaration of rights, obligations, duties, and liability of Indian Harbor under the aforesaid Indian Harbor Professional Liability Policy's "Rectification Coverage."

15. Grimberg also seeks damages, fees, and costs against Indian Harbor for breaching its obligations to provide "Rectification Coverage" under the Professional Liability Policy, as well as Indian Harbor's breach of the implied covenant of good faith and fair dealing by unreasonably failing to comply with its obligations under the "Rectification Coverage" provision of the Indian Harbor Professional Insurance Policy, including Indian Harbor's improper claims handling practices and Indian Harbor's failure to pay in connection with Grimberg's claim for "Rectification Coverage," which is contrary to Maryland insurance law, so as to deny Grimberg the coverage to which Grimberg is entitled under the Indian Harbor Policy.

16. Grimberg further seeks relief pursuant to Md. Code Ann., Ins. Sec. 27-1001; Md. Code Ann., Cts. & Jud. Proc. Sec. 3-1701; and the Unfair Claims Handling Practices set forth in the Code of Maryland Regulations, as well as for common law bad faith denial of Grimberg's insurance claim.

## FACTS

**The Middle/High School Replacement Project At The Marine Corps Base Quantico**

17. On November 20, 2017, the Navy awarded Grimberg a contract for the Project. Grimberg's performance of the contract with the Navy is ongoing, and the Project is not yet complete.

18. Nudura Corporation specializes in the design and manufacturing of Insulated Concrete Form ("ICF") wall system products and promotes itself as an engineering expert in ICF wall systems. Nudura Corporation represented to the public from 2016 to 2019, inclusive, that it was an expert in the design and construction of Insulated Concrete Form ("ICF") walls utilizing Nudura products and its certified trained installers.  Nudura's website represented that Nudura has trained and qualified installation contractors who can install the ICF Wall System in accordance with Nudura standards.

19. Nudura's marketing materials represented to the public and Grimberg from 2016 to 2019, inclusive, that Nudura uses its ICF wall design expertise to provide professional technical support and design services including, but not limited to reviewing and making recommendations concerning: (a) ICF wall design drawing details; (b) ICF wall shop drawing submittals; (c) ICF wall mockups; and (d) ICF wall RFI's, if necessary.

20. Nudura specifically provided Grimberg with marketing materials which represented that Nudura would provide: (a) architectural and structural design review; (b) design drawing review & recommendations; (c) review, coordination and submittal of appropriate ICF wall specifications and RFI's; (d) review of ICF wall shop drawings and installation instructions; and most importantly (e) periodic onsite technical support and oversight of the ICF wall construction by its approved certified installers throughout the design, preconstruction, and construction phases.

21. On February 27, 2019, Steve Grimberg, Grimberg's Vice President, relying upon Nudura's representations to Grimberg that it would provide professional technical oversite for the pre-construction and construction activities related to the ICF walls (including, but not limited to, review of ICF wall submittals, mockups, and other ICF wall construction activities), executed a Purchase Order (The "Grimberg/Nudura Purchase Order"), dated February 25, 2019, to utilize Nudura's ICF wall system products, components and professional technical support services.

22. Prior to entering into the Grimberg/Nudura Purchase Order, Grimberg informed Nudura that Grimberg had no experience with the installation of ICF wall systems, and had to rely on Nudura's technical professional expertise relating to the design and construction of ICF wall systems for the Project.

5

23. Grimberg executed the Grimberg / Nudura Purchase Order in reliance on Nudura's ICF wall design representations made to Grimberg that: (a) Nudura was the basis of design for the Project's ICF wall systems and that Nudura worked with EwingCole, the Designer of Record, in preparing the ICF wall system Project design; (b) that the Project's ICF wall system drawing details were consistent with Nudura's standard practices, procedures and installation manual; (c) that if the design was followed, it would result in an ICF wall system that was sufficient to meet the Government's design criteria; (d) that its certified installer, The PCS Group, was trained in Nudura's ICF wall construction standards and installation procedures; and (e) that Nudura would provide periodic professional technical oversight to Grimberg and The PCS Group during the ICF wall construction regarding Nudura's standard ICF wall installation procedures and installation instructions.

24. Nudura's professional technical support, design review, and oversight was to be provided specifically by two professional technical representatives of Nudura, Andrew Horgan, Nudura's Director and Chief Technical Representative and Randy White, Nudura's alternative Technical Representative, both of whom were Architects.

25. Nudura's installation manuals and standard practices required the critical vertical rebar to be "woven" or "threaded" between alternating horizontal layers of rebar so as to be locked in place to prevent severe drifting of the vertical bars during concrete pours, however the construction details furnished to the Government by Nudura showed the vertical rebar consistently on the outside of the horizontal rebars (i.e. not woven or threaded) as did the shop drawings that were to be reviewed by Nudura's technical representative.

26. Nudura's professional technical representatives failed to alert Grimberg that the standard details on the contract drawings and/or the shop drawings did not meet Nudura's

requirement to weave the vertical rebar between alternating rows of horizontal rebar placed in the ICF wall forms prior to pouring the concrete in order to lock the vertical rebar in place and to prevent drifting of the vertical rebar to the center of the ICF walls.

27.    Nudura's professional technical representatives failed to render the promised periodic oversight and technical support to its certified installer, The PCS Group, to ensure that The PCS Group was meeting Nudura's standard practices and installation instructions.

28.    As a result of Nudura's professional representatives' failure to provide the technical oversight to its installer The PCS Group and Grimberg's onsite construction management during the preconstruction activities, and during the ICF wall construction from February 2019 through March 2020, Nudura's certified installer, The PCS Group, installed the majority of the critical vertical rebar without "weaving" the vertical rebar between alternating horizontal rebar during construction, which allowed a majority of the vertical rebar to drift inward significantly during the concrete wall pours. This drifting of the critical vertical rebar towards the center of the ICF walls substantially reduced the ICF wall system's ability to withstand lateral forces from wind, blast and seismic loads and thereby created a serious potential catastrophic safety hazard to the future occupants of the new School Building Project.

29.    As a result of Nudura's professional negligence, errors or omissions, the vertical rebar was misplaced by Nudura's certified installer, The PCS Group, and was placed in a majority of instances inside the horizonal rebar, resulting in the inward drifting of the vertical rebar to the middle of the ICF walls during the concrete pours. This produced an ICF wall system which lacked sufficient structural integrity to withstand the wind, blast and seismic lateral forces required by Government Regulations for inhabited military base structures, thereby

creating a serious risk of potential injury and/or death to the future occupants of the new Middle/High School Project.

30. Grimberg did not discover the drifting inward of the vertical rebar to the middle of the ICF walls due to the lack of "weaving" the vertical rebar between alternating rows of horizontal rebar until the summer of 2021 during the full investigation of the void spaces in the concrete using a surface penetrating radar survey for possible significant void spaces in the concrete within the ICF walls.

31. In July of 2021, after thorough surveys and investigation using extensive surface penetrating radar, it was revealed that a substantial number of the vertical rebar had negligently been installed inside the horizontal rebar which allowed the vertical rebar to drift inward toward the middle of the ICF walls during the concrete pours of the ICF walls installed throughout the Project.

32. The drifting of the vertical reinforcing bars during the concrete pours of the ICF walls produced a defective ICF wall system that was structurally deficient and which resulted in a product that was so defective that it has to be demolished and replaced because the ICF walls as constructed were a catastrophic safety hazard that was life threatening to the occupants of the new Middle/High School Project (students, teachers, and other visitors to the Project) in cases of severe wind, blast or seismic loading and could not be repaired as a practical matter but had to replaced, which additional costs normally fell within the rectification provisions of the Indian Harbor Professional Liability Policy.

33. On July 28, 2021, the Navy directed Grimberg to demolish and reconstruct all the ICF walls stating: "[t]he subject contract requires that construction of Insulated Concrete Formwork (ICF) meet standards as set forth in the contract drawings and specifications. The ICF

walls as currently constructed are noncompliant with these standards. In order to meet these standards, the walls will need to be demolished and reconstructed."

34. On August 9, 2021, Grimberg wrote to Navy stating it would consider proceeding with Navy's direction to reconstruct the ICF walls properly by using the "weaving" technique of fixing the vertical rebars in place.

35. Subsequently, pursuant to a meeting on August 18, 2021, Nudura's Chief Technical Representative stated that the weaving of the vertical bars was a standard practice that should have been employed by its certified installer, The PCS Group, but was not adhered to.

36. On August 19, 2021, the Navy Command emphatically directed Grimberg to demolish all the ICF walls stating: "[t]he Government's direction to reconstruct the Insulated Concrete Formwork (ICF) remains."

37. On September 10, 2021, Grimberg, through its claims representative RCM&D, provided notice of its claim for "Rectification Expense" coverage to Indian Harbor under the Indian Harbor Profession Liability Policy, and informed Indian Harbor that the Navy issued to Grimberg a final directive to demolish and replace the ICF walls that were constructed and replace then in accordance with industry standards.

38. On September 22, 2021, Grimberg wrote to Indian Harbor, pursuant to the terms of the Indian Harbor Professional Liability Policy, and sought Indian Harbor's consent to the expenditure to the additional costs to be incurred by Grimberg for demolishing and replacing the ICF walls.

39. On November 8, 2021, Indian Harbor "waived" the requirement under the Indian Harbor Professional Liability Policy requiring Indian Harbor to consent to the expenses to demolish and rebuild the ICF walls.

40. Subsequently, in mid-November 2021, Grimberg started to demolish all the ICF walls. The complete demolition and reconstruction of the ICF Wall structures is scheduled to continue through 2022.

41. The present estimate of the costs of demolishing and rebuilding all the ICF walls is estimated to be in excess of $10.5 million, well in excess of the $3,000,000 policy limits, and does not include the additional costs anticipated from the escalation of the follow-on mechanical, electrical, and finish trades once the complete superstructure is in place.

## The Indian Harbor Policy

42. Indian Harbor sold Grimberg a Professional Liability For Construction Contractors And Construction Support Services Providers policy to Grimberg (the "Indian Harbor Policy"). A true and correct copy of the Indian Harbor Policy is attached hereto as **Exhibit A.**

43. Grimberg is the "named insured" under the Indian Harbor Policy.

44. The Indian Harbor Policy was in effect from October 1, 2020 to October 1, 2021. The Policy Number is CEO7421192. The policy provides for "rectification" coverage of $3,000,000 for each rectification expense, with a "Retroactive Date" of July 1, 2009, as well as various other coverages.

45. The Indian Harbor Policy provides for "Rectification Coverage":

> **B.   Rectification Coverage**
>
> We will indemnify the **Insured** for **Rectification Expense** reasonably and necessarily incurred with respect to any action to mitigate or rectify a negligent act, error, or omission arising from **Professional Activities and Duties** that would otherwise lead to a **Professional Liability Claim** covered under this policy, provided that:
>
> 1. the **Professional Activities and Duties** are rendered on or after the **Retroactive Date** and prior to the expiration of the **Policy Period**;

10

    2. during the **Policy Period**, the **Insured** must provide us with immediate notice of the negligent act, error, or omission arising from **Professional Activities and Duties** and of the proposed corrective action, if any, along with all supporting documentation, in writing prior to incurring any **Rectification Expense**; and

    3. all **Rectification Expense** must be approved by us, in writing, prior to being incurred by the Insured.

(emphasis in original).

46.    The Indian Harbor Policy defines the following terms:

(a) **Professional Activities and Duties AA.** means those activities whether part of, incidental to, or for which you have responsibility in your business as a construction contractor, construction manager, construction support services provider, owner's representative, environmental contractor, environmental consultant, environmental support services provider, or as stated in Sections 4. and 5. of the Application for this insurance policy executed by you, which are undertaken by or under the supervision of persons or personnel who have attained an appropriate professional qualification, certification or license, where applicable.[1]

(b) **Professional Liability Claim BB.** means a monetary demand or notice, or assertion of a legal right alleging liability or responsibility on the part of the **Insured** and includes a lawsuit, petition, or governmental or regulatory action commenced against the **Insured** arising out of **Professional Activities and Duties**.

(c) **Rectification Expense GG**. means direct costs and expenses that we deem necessary to rectify a negligent act, error, or omission in the **Insured's Professional Activities and Duties** or to prevent further damages resulting from said act, error, or omission.

**Rectification Expense** does not include any of the **Insured's** profit, overhead, or mark-up, or any betterment to a project to which **Rectification Expense** applies.

(emphasis in original).

### Indian Harbor Refuses to Provide Coverage

---

[1] The definition of "Professional Activities and Duties" is found in Endorsement #019 to the Indian Harbor Policy.

11

47. On September 10, 2021, Grimberg provided notice of a claim for "Rectification Expense" coverage to Indian Harbor under the Indian Harbor Policy. Grimberg informed Indian Harbor that the Navy provided Grimberg with direction to demolish and replace the ICF walls.

48. On September 22, 2021, Grimberg wrote to Indian Harbor, pursuant to the terms of the Indian Harbor Professional Liability Policy, and sought Indian Harbor's consent to the expenses for demolishing and replacing the ICF walls.

49. On November 8, 2021, Indian Harbor waived the requirement under the Indian Harbor Professional Liability Policy requiring Indian Harbor to consent to the expenses to demolish and rebuild the ICF walls.

50. Subsequently, in mid-November 2021, Grimberg started to demolish all the ICF walls. The complete demolition and reconstruction of the ICF Wall structures is scheduled to continue through 2022.

51. As a result of Indian Harbor not providing coverage in a reasonable time period, Grimberg had to finance the costs of the demolition and replacement of the ICF walls itself, rather than receive the benefits of the Indian Harbor Insurance policy, which costs presently exceed $10.5 million.

52. On February 7, 2022, Indian Harbor denied improperly denied rectification coverage under the Indian Harbor Professional Liability Policy based upon Exclusion B "Notices to Previous Insurers", as well as Exclusion A "Known Circumstances or Conditions" based on Grimberg's alleged prior notice to Grimberg's prior professional liability carrier, Pioneer Underwriters, on September 3, 2020, which only referenced defective work performed by subcontractors and did not reference the drifting of the vertical rebar to the center of the ICF walls, which was not discovered until a year later.

53. On February 25, 2022, Grimberg responded to Indian Harbor's denial of coverage and explained that Indian Harbor's denial of coverage was improper because prior to the summer of 2021 Grimberg and the Navy were unaware of the shifting of the significant number of vertical rebar to the middle of the ICF walls which made the ICF walls construction structurally deficient and unable to withstand the required wind, blast and seismic loads. The shifting of the majority of the vertical rebar towards the middle of the ICF walls was not reasonably discovered until after significant surface penetrating radar was employed on the ICF walls to ascertain the concrete voids in the ICF walls that had to be repaired in the summer of 2021.

54. Prior to the extensive surface penetrating radar survey in the summer of 2021, Grimberg was unaware of the drifting of the vertical rebar to the center of the ICF walls rendering them structurally inadequate to resist the required wind, blast and seismic loads, and Grimberg was therefore unaware of this issue in September 2020 when Grimberg provided notice to its prior professional liability carrier, Pioneer.

55. By letter dated October 18, 2022, over a year after Grimberg's initial notice of claim, Indian Harbor again disclaimed rectification coverage under the Indian Harbor policy.

56. Despite having taken approximately five months to evaluate Grimberg's rectification claim, Indian Harbor failed to comply with its coverage obligations to Grimberg and then improperly rejected Grimberg's "Rectification Claim" under the Indian Harbor Policy based upon Grimberg's alleged prior notice to other insurers.

## COUNT I
## DECLARATORY JUDGMENT

57. Grimberg realleges and incorporates by reference each and every allegation set forth above in this Complaint.

58. Indian Harbor has an obligation to provide Grimberg with insurance coverage under the Indian Harbor Policy.

59. Indian Harbor refused to provide insurance coverage under the Indian Harbor Policy.

60. Accordingly, there is an actual and justiciable controversy concerning Indian Harbor's obligations to Grimberg and Grimberg's rights under the Indian Harbor Policy.

61. Grimberg requests a judicial determination and declaration of the parties' respective rights, obligations, duties and liabilities under the Indian Harbor Policy.

62. Declaratory relief is appropriate and necessary at this time so that the parties may ascertain their respective rights, obligations, duties, and liabilities under the Indian Harbor Policy.

## COUNT II
## BREACH OF CONTRACT

63. Grimberg realleges and incorporates by reference each and every allegation set forth above in this Complaint.

64. Indian Harbor was obligated to provide insurance coverage to Grimberg for "Rectification" as stated in the Indian Harbor Policy.

65. Grimberg has submitted a claim to Indian Harbor seeking $3 million of coverage, the full amount of coverage under the Indian Harbor Policy.

66. No exclusion bars coverage for Grimberg's claim.

67. Indian Harbor's refusal to provide coverage for Grimberg's claim is a breach of its contractual obligations to Grimberg.

68. As a result of Indian Harbor's breach, Grimberg has suffered and continues to suffer damages.

## COUNT III
## STATUTORY LACK OF GOOD FAITH

69. Grimberg realleges and incorporates by reference each and every allegation set forth above in this Complaint.

70. This claim is filed pursuant to Md. Code Ann., Ins. Sec. 27-1001 and Md. Code Ann.., Cts. & Jud. Proc. Sec. 3-1701; and the Unfair Claims Handling Practices set forth in the Code of Maryland Regulations.

71. Indian Harbor is an "Insurer" as defined in Section 1-101 of the Maryland Insurance Article.

72. The Indian Harbor Policy has applicable limits in excess of $1,000,000.00 and thereby meets the requirements of Section 3-1701(c)(2)(iii) of the Courts and Judicial Proceedings Article.

73. At all times relevant, Indian Harbor owed Grimberg a duty to act in good faith in its investigation, analysis and adjustment of Grimberg's claim for insurance coverage under the terms of the Indian Harbor Policy.

74. Indian Harbor's duty is statutory and independent of its duties arising out of the insurance contract to exercise such reasonable skill and ordinary diligence as may fairly be expected from an insurer.

75. Indian Harbor breached its duty of good faith to Grimberg because it improperly denied Grimberg's claim.

76. Grimberg's Notice of Claim was timely submitted on September 10, 2021 and was improperly denied five months later on February 9, 2022.

77. As a direct and proximate result of Indian Harbor's breaches of its duties of good faith, Indian Harbor has deprived Plaintiff of the benefits of the insurance coverage, and

Indian Harbor has further damaged Plaintiff by delaying Plaintiff's recovery for the damages it suffered.

78. Plaintiff is entitled to an award of Court costs, attorneys' fees, and interest incurred in obtaining the benefits due under the Indian Harbor Policy.

## COUNT IV
## COMMON LAW BAD FAITH DENIAL OF INSURANCE CLAIM

79. Grimberg realleges and incorporates by reference each and every allegation set forth above in this Complaint.

80. Indian Harbor has put its own interest above those of Plaintiff and has, in bad faith, failed or refused to perform its obligations under the Indian Harbor Policy.

81. Indian Harbor engaged in the following bad faith conduct:

(a) failing or refusing to perform a fair, objective, and thorough investigation of the claims as required by the Maryland Insurance Code;

(b) failing to give Plaintiff's interests equal consideration with its own; and

(c) forcing Plaintiff to institute litigation to recover amounts due under the policy.

82. As a proximate result of the aforementioned bad faith conduct by Indian Harbor, Plaintiff has suffered and will continue to suffer damages. These damages include interest on the withheld and unreasonably delayed payments due under the Indian Harbor Policy and other special economic and consequential damages, of a total amount to be shown at trial.

83. As a further proximate result of Indian Harbor's bad faith conduct, Plaintiff was compelled to retain legal counsel to obtain the benefits due under the Indian Harbor Policy. Indian Harbor is therefore liable to Plaintiff for those attorneys' fees, witness fees, and costs of litigation reasonably necessary and incurred by Plaintiff to obtain the benefits of the Indian Harbor Policy.

84. Indian Harbor carried out its bad faith conduct with a willful and conscious disregard of Plaintiff's rights and subjected Plaintiff to unjust hardship in conscious disregard of Plaintiff's rights.

85. Indian Harbor's conduct constitutes a willful and conscious disregard of Plaintiff's rights, entitling Plaintiff to punitive damages, Court costs, attorney's fees and prejudgment interest.

## PRAYER FOR RELIEF

WHEREFORE, Grimberg requests that this Court enter judgment in its favor an against Indian Harbor as follows:

1. Compensatory, consequential and punitive damages against Indian Harbor in an amount of at least $10.5 million, the exact amount to be proven a trial, representing Grimberg's costs of demolishing and rebuilding the ICF walls;

2. Prejudgment and post judgment interest;

3. An award of court costs and attorneys' fees; and

4. A declaratory judgment in favor of Grimberg and against Indian Harbor declaring that the Indian Harbor Policy provides coverage, in whole or in part, for amounts incurred in connection with Grimberg's claim; and

6. Such other and further relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury for any issue so triable in this action.

Date: October 20, 2022

                                        Respectfully submitted,

                                        __/s/ Herman Braude_____
                                        Herman M. Braude
                                        (MD Bar No. 02573)
                                        Braude Law Group, P.C.
                                        11820 Parklawn Drive, Ste 401
                                        Rockville, MD 20852
                                        (202) 471-5400 (voice)
                                        (202) 471-5404 (fax)
                                        Counsel for John C. Grimberg Construction Co., Inc.